IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DIETRICH, | : | 1:11-cv-925 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| SUSQUEHANNA VALLEY | : | |
| SURGERY CENTER | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM

## February 5, 2013

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Presently before the Court is the Motion for Summary Judgment of Defendant Susquehanna Valley Surgery Center (Doc. 46). For the reasons set forth below, the motion shall be granted.

## I. PROCEDURAL HISTORY

On May 13, 2011, Plaintiff Robert Dietrich ("Dietrich"), filed a complaint against Defendant Susquehanna Valley Surgery Center ("SVSC"). (Doc. 1). Specifically, Plaintiff asserted claims against Defendant for violations of the following: (1) Count I: Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) Count II: Pennsylvania Human Relations Act ("PHRA"), 44

P.S. § 951, *et seq.*; and (3) Count III: Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* All three counts are at predominantly based on SVSC's termination of Plaintiff's employment. (Doc. 1 ¶¶ 34-64).

On November 1, 2012, Defendant filed the Motion for Summary Judgment that is currently at issue (Doc. 46) along with a brief in support thereof (Doc. 47). Plaintiff filed a brief in opposition on December 4, 2012, (Doc. 57), and Defendant filed a reply brief on December 14, 2012. (Doc. 58). Thus, the pending motion has been fully briefed and is ripe for disposition.

## II. FACTUAL BACKGROUND[1]

Plaintiff Dietrich was employed by Defendant SVSC from January 22, 2003 until his termination on June 15, 2009. (Doc. 50 ¶ 2). At the time of his termination, he was employed by SVSC as an operating room technician. (Doc. 55 ¶ 2). Dietrich is a hemophiliac and SVSC was aware of his condition at all relevant times. (Doc. 50 ¶¶ 4, 5). Dietrich's hemophilia requires him to use medication to control and/or treat his bleeding and to occasionally take time off from physical activity to control major bleeds. (Doc. 1 ¶ 16). Each time Dietrich had to miss work for hemophilia-related reasons, he informed SVSC that the

---

[1] Facts are principally derived from Defendant's Proposed Findings of Fact (Doc. 50) and Plaintiff's Response (Doc. 56).

absence was for hemophilia-related reasons. (Doc. 50 ¶ 29). Dietrich claims that he was permitted to take time off for hemophilia-related reasons, but that he nevertheless received discipline for taking that time. (Doc. 56 ¶ 30). SVSC agrees that it never denied Dietrich any time off when he felt unable to work for hemophilia-related reasons, but contends that the majority of Dietrich's absences were unrelated to hemophilia and fell on work days immediately prior to and following weekends. (Doc. 50 ¶¶ 30-32).

Dietrich received a number of written warnings throughout 2003 and 2004 as a result of absenteeism and received a one-day suspension on January 18, 2005. (Doc. 50 ¶¶ 19-25). At this time, Dietrich spoke with Deb Leib ("Leib"), SVSC's Administrator, and claimed that he was being discriminated against because of his hemophilia. (Doc. 50 ¶¶ 26, 27). On or about February 3, 2006, he received another written warning which was followed by another one-day suspension on November 2, 2006. (Doc. 50 ¶¶ 33, 34). The November 2006 disciplinary action, signed by Dietrich and his supervisor, Rebekah Troutman, states that "an employee who accumulates eight occurrences of absence within a twelve month period are [sic] eligible for termination." (Doc. 51-3 at 57). The document lists more than eight days on which Dietrich was absent and goes on to say that "Bob has had additional absences that were related to his chronic health condition that

3

have not been counted in the above occurrences." (Doc. 51-3 at 57). Dietrich's attendance improved over time and his January 2009 annual performance review rated his attendance as improved and satisfactory. (Doc. 50 ¶ 39).

Since approximately 1999, Dietrich has owned and operated a side landscaping business. (Doc. 50 ¶ 40). On Sunday, June 7, 2009, as part of his landscaping business, Dietrich began work on installing a patio for Dr. Ernst, an eye surgeon affiliated with SVSC. (Doc. 50 ¶ 45). The installation was a "rush job" and to complete this project, Dietrich employed a part-time employee, Damien Silks, who had no background in landscaping prior to 2009 and had not previously installed a patio. (Doc. 50 ¶¶ 41, 46, 48, 49, 56). While working at Dr. Ernst's house on June 7, 2009, Dietrich began passing blood in his urine. (Doc. 50 ¶ 50). Upon discovering this, he cut short the work day, drove home with Silks, and began taking hemophilia medication to treat his internal bleeding. (Doc. 50 ¶ 51). Later on June 7, 2009, Dietrich called Greg Beishline, his immediate supervisor at SVSC, to inform him that he had an internal bleed and that he would be absent from work the following day, Monday, June 8, 2009. (Doc. 50 ¶ 53). On June 8, 2009, Dietrich stayed home and administered his hemophilia medication, which causes drowsiness. (Doc. 50 ¶ 60). Also on June 8, in Rebekah Troutman's presence, Dr. Ernst talked about the patio project Dietrich was

completing at his home and mentioned that it needed to be completed in time for his daughter's graduation party scheduled for that weekend. (Doc. 50 ¶ 61). Dietrich called Beishline on the afternoon of Monday, June 8, to report that he would be absent again on Tuesday because he needed to stay home and wait for delivery of additional medication. (Doc. 50 ¶ 62). Dietrich claims that he called Beishline again on Tuesday to report that he would be absent on Wednesday. (Doc. 50 ¶ 65). Beishline denies that he ever spoke with Dietrich or received a voicemail message from him regarding that day. (Doc. 50 ¶ 73). Dietrich did not report to work on Wednesday, June 10, 2009. (Doc. 50 ¶ 78). Instead, Dietrich and Silks drove together to Dr. Ernst's house. (Doc. 50 ¶ 79). Dietrich and Silks arrived at Dr. Ernst's house shortly after 10 a.m. and left between 1:30 p.m. and 2 p.m. when a thunderstorm approached. (Doc. 50 ¶ 81). Dietrich claims that he did not perform physical labor at Dr. Ernst's on June 10, but merely provided instruction and supervision to Silks. (Doc. 50 ¶ 82). Meanwhile, Rebekah Troutman noticed that Dietrich was not at work and contacted Beishline to ask whether Dietrich had called off work for that day. (Doc. 50 ¶¶ 88, 89). Beishline responded that he had not heard from Dietrich. (Doc. 50 ¶ 90). When Deb Lieb arrived at work, Rebekah Troutman informed her that Dietrich had not arrived. (Doc. 50 ¶ 95). SVSC claims that Leib drove by Dr. Ernst's house during her

5

lunch break and personally observed Dietrich's landscaping truck parked near the house as well as Dietrich himself outside the house with his shirt off. (Doc. 50 ¶¶ 98, 99). Dietrich denies that Lieb witnessed him, based on the fact that he was within sight of the road and never saw Lieb drive past the home that day. (Doc. 56 ¶¶ 98, 99). Early on the morning of Thursday, June 11, 2009, Dietrich called Beishline to report that he would not be at work that day, but expected to return on Friday, June 12, 2009. (Doc. 50 ¶ 102). Later in the day on June 11, 2009, Rebekah Troutman called Dietrich to inform him that, due to issues related to his absence on June 10, he had been suspended indefinitely pending further investigation. (Doc. 50 ¶ 104). Deb Lieb and Rebekah Troutman made the decision to terminate Dietrich's employment and on June 15, 2009, Troutman called Dietrich to inform him that his employment had been terminated. (Doc. 50 ¶ 111, 113).

### III. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## IV. DISCUSSION

Plaintiff presents claims under the ADA, PHRA, and FMLA. The legal standard for "[t]he PHRA is basically the same as the ADA in relevant respects and 'Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts.'" *Rinehimer v. Cemcoloft, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (quoting *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996)). Therefore, our analysis of Plaintiff's ADA claim applies equally to his PHRA claim.

Plaintiff presents discrimination and retaliation claims under both the ADA and FMLA. It is undisputed that all of these claims are subject to the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Doc. 57 at 3, Doc. 58 at 2). Under the *McDonnell Douglas* framework,

the plaintiff first bears an initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff can do so, a presumption of discrimination or retaliation arises and the burden shifts to the defendant to produce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory [or nonretaliatory] reason for the unfavorable employment decision." *Dawley v. Erie Indem. Co.*, 100 Fed. Appx. 877, 880 (3d Cir. 2004) (citations and quotations omitted). A defendant satisfies its burden under this prong so long as it articulates any nondiscriminatory reason for the adverse employment action. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason.").

"If the defendant carries this burden, the presumption drops out and the plaintiff must submit evidence from which a fact finder could reasonably either (i) disbelieve the employer's articulated legitimate reasons; or (ii) believe that an invidious discriminatory [or retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action." *Dawley*, 100 Fed. Appx. at 880 (citations and quotations omitted). "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . .

9

Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994); *see also Castellani v. Bucks County*, 351 Fed. Appx. 774, 777 (3d Cir. 2009).

### A. Plaintiff's ADA and PHRA Claims

To establish a *prima facie* case of disability discrimination, a plaintiff must prove that he (1) has a disability, (2) is a qualified individual, and (3) has experienced an adverse employment action because of his disability. *See Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). Here, the first two criteria are not in dispute and we cannot say that a reasonable jury could not initially believe the third. However, SVSC has articulated a legitimate and nondiscriminatory reason for terminating Dietrich's employment. SVSC denies that Dietrich's termination was because of his hemophilia; rather, SVSC claims that he was fired because he failed to appear at work and was seen conducting his landscaping business instead. Plaintiff is therefore subjected to the more exacting standard described in *Fuentes*. He must demonstrate that a reasonable fact finder could rationally find SVSC's proffered reason for terminating him to be unworthy

of credence. In the situation presented by this case, the burden on the Plaintiff to prove a retaliation claim under the ADA is essentially identical to his burden to prove a discrimination claim. To succeed with either claim, Dietrich must show that SVSC's stated reason is pretext. *See Castellani,* 351 Fed. Appx. at 777-778.

Even assuming that Plaintiff could establish a prima facie case of discrimination and/or retaliation, his claims would fail because he lacks evidence that the legitimate non-discriminatory non-retaliatory reason offered by SVSC was pretext for discriminatory or retaliatory animus. SVSC maintains that Dietrich was fired because (1) he failed to call and notify anyone at SVSC that he would be absent on June 10, 2009, and (2) he was discovered engaging in his side landscaping business on that day. On the first point, there continues to be a factual dispute, as Dietrich maintains that he did call and leave a voicemail message on June 9, 2009. However, on the second and far more critical point there is no real dispute. Dietrich claims that he was not "working" at Dr. Ernst's house but rather merely supervising his employee. He also denies that any agent of SVSC saw him at Dr. Ernst's house, based on the fact that he did not personally witness any SVSC employees observing him. Ultimately though, Dietrich admits that he was at Dr. Ernst's home conducting his landscaping business for a number of hours on June 10, 2009. Regardless of how SVSC learned of this fact, it

undeniably gained knowledge of Dietrich's actions at some point prior to terminating him. Any employee, regardless of his or her disability or lack thereof, might reasonably expect their employer to take disciplinary action if he or she is absent from work and found to be instead engaging in some other side business. This is especially true if the employee failed to notify his or her employer of the impending absence, but such behavior can reasonably be seen as dishonest and worthy of discipline even if an excused absence was requested. Plaintiff has not presented evidence which could lead a reasonable jury to infer that this rationale for his termination is weak, implausible, inconsistent, incoherent, or contradictory. Because Plaintiff has failed to throw enough doubt on SVSC's explanation for a rational fact finder to reject it, Defendant's Motion for Summary Judgment shall be granted as to Plaintiff's ADA and PHRA claims.

### B. Plaintiff's FMLA Claims

In addition to his ADA and PHRA claims, Plaintiff also presents claims under the FMLA. The FMLA provides that an eligible employee is entitled to twelve workweeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of his or her position. *See* 29 U.S.C. § 2612(a)(1)(D). The statute makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to

exercise any right provided" under the statute. 29 U.S.C. § 2615(a)(1).

Here, Plaintiff alleges that SVSC (1) did not issue to him a Notice of Rights and Responsibilities under the FMLA, (2) did not issue to him a Notice of Eligibility under the FMLA, (3) refused to offer or grant him leave time pursuant to the FMLA, and (4) terminated him in order to avoid its responsibilities under the FMLA. (Doc. 1 ¶¶ 58-64). None of these arguments are sufficient to survive summary judgment.

An employer's failure to issue a Notice of Rights and Responsibilities does not automatically amount to a statutory violation and does not support a cause of action under the FMLA in the absence of any injury. *See Alifano v. Marck & Co., Inc.*, 175 Fed. Supp.2d 792, 794 (E.D. Pa. 2001); *Voorhees v. Time Warner Cable Nat'l Div.*, 1999 WL 673062 (E.D. Pa. 1999); *Fry v. First Fidelity Bancorp.*, 1996 WL 36910 (E.D. Pa. 1996). Here, even if Dietrich did not receive this notice, he was never denied leave or otherwise injured by a violation of the FMLA. He was clearly aware of his ability to stay home from work on days when his medical condition required him to do so. He was never denied such a request and, as discussed above, he has not shown that his termination was related to his hemophilia.

Plaintiff's second argument fails for the same reason, because an employer's

failure to comply with the notice requirements of the FMLA only supports a cause of action where the inadequate notice effectively interferes with a plaintiff's statutory rights. *See, e.g., Fink v. Ohio Health Corp.*, 139 Fed. Appx. 667, 671 (6th Cir. 2005); *Womack v. Brown-Forman Corp.*, 2012 WL 4450892 (E.D. Tenn. 2012); *Lacoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 219 (S.D.N.Y. 1997). Dietrich exercised his right to FMLA leave without interference. By raising the issue of these notices in the absence of any FMLA-related injury, Plaintiff asks us to emphasize form over substance. We, in agreement with the numerous other courts that have examined this issue, decline to do so.

As stated above, Plaintiff has not shown that he was injured by a deprivation of his FMLA rights. Plaintiff's third argument fails because Dietrich admits that he never reported to work when he was medically unable due to his hemophilia and that his requests for time off due to his condition were never denied. (Doc. 50 ¶ 134, Doc. 56 ¶ 134). Plaintiff's fourth argument fails because, as discussed in our analysis of his ADA and PHRA claims, he has not demonstrated weakness in SVSC's purported rationale for his termination such that a reasonable fact finder could infer it to be pretextual. Because Dietrich has not shown that his rights under the FMLA were denied, Defendant's Motion for Summary Judgment shall be granted as to Plaintiff's FMLA claims.

## V. CONCLUSION

For the foregoing reasons, we shall grant Defendant Susquehanna Valley Surgery Center's Motion for Summary Judgment (Doc. 46). An appropriate order shall issue.